# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

CRIMINAL NO. 5:21-CR-35-KKC

UNITED STATES OF AMERICA                                PLAINTIFF

V.                  **SENTENCING MEMORANDUM**

JOSHUA PREECE                                       DEFENDANT

\*   \*   \*   \*   \*

On October 12, 2021, Joshua Preece pleaded guilty to Count 1 of the Indictment. *See* [R. 32: Minute Entry for Rearraignment]. Count 1 alleged Mr. Preece solicited a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, a violation of 18 U.S.C. § 2251(a). *See* [R. 1: Indictment, Page 1].

Mr. Preece has outstanding objections to the Pre-Sentence Investigation Report (PSR) discussed below. Mr. Preece respectfully requests the Court impose a sentence of 210 months followed by supervision by the United States Probation Office (USPO) with special conditions.[1] Mr. Preece offers the following in order to assist the Court:

---

[1] Pursuant to Paragraph 8 of his Plea Agreement, Mr. Preece has reserved the right to appeal "any aspect of [his] sentence if the length of the term of imprisonment exceeds 240 months (20 years)." [R. 34: Plea Agreement, Page 8].

## Nature and Circumstances of the Offense

Paragraphs 7-10 of the PSR describe the nature and circumstances of the offense. Mr. Preece engaged in sexual contact with a minor on November 5, 2018 and messaged the minor to ask for sexually explicit photos. *See* PSR, Paragraphs 7-8. The minor "sent a picture of her breasts" and "two nude photos of her vagina." *Id*. This is the conduct for which Mr. Preece is being sentenced.

Of note, Mr. Preece's relevant conduct under the Sentencing Guidelines does not include other acts related to the dismissed counts in the Indictment. The Guidelines provide two definitions of "relevant conduct." First, relevant conduct is defined as:

> all acts or omissions committed…or willfully caused by the defendant…that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

USSG § 1B1.3(a)(1). But for those offenses "of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct extends to "all acts and omissions…that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). The latter is the more common, broader definition of relevant conduct that applies in the majority of federal criminal cases.

Here, Mr. Preece's Count 1 conviction triggers a calculation under USSG § 2G2.1 of the Guidelines. *See* PSR, Paragraph 15. "Section 2G2.1 offenses involving the sexual exploitation of minors are explicitly excluded from §

3D1.2(d)'s multiple-count grouping rule[.]" *United States v. Schock*, 862 F.3d 563, 567 (6th Cir.2017) (citing USSG § 1B1.3(a)(2); USSG § 2G2.1, comment (n.7); *United States v. Weiner*, 518 Fed.Appx. 358, 364 (6th Cir.2013)). As a result, Mr. Preece's offense of conviction is not one "for which § 3D1.2(d) would require grouping of multiple counts[,]" and USSG § 1B1.3(a)(1)'s narrower definition of relevant conduct applies. *Id*.

Mr. Preece's relevant conduct for sentencing purposes is limited to those acts connected to his Count 1 conviction. *See* USSG § 1B1.3(a)(1). This Court must calculate Mr. Preece's applicable Guidelines range based solely on that conduct.

### Objection to Two-Level Enhancement for Knowingly Engaging in Distribution – USSG § 2G2.1(b)(3)

Mr. Preece objects to USPO's application of a two-level enhancement pursuant to USSG § 2G2.1(b)(3) based on its determination that he "knowingly engaged in distribution." This enhancement was not contemplated in Mr. Preece's Plea Agreement. *See* [R. 34: Plea Agreement, Pages 4-8].

Mr. Preece entered a guilty plea to Count 1 of the Indictment. In exchange for his plea, the government agreed to dismiss the remaining 17 counts as part of Mr. Preece's Plea Agreement. *See* [R. 34: Plea Agreement, Page 1, Paragraph 1]. As discussed previously, Mr. Preece's guilty plea relates to offense conduct occurring on November 5, 2018. In relevant part, Mr. Preece requested that a minor send him sexually explicit images on that date. *See* PSR, Paragraph 8.

To be clear, Mr. Preece did not send sexually explicit images to the minor or to anyone else on November 5, 2018. He did not participate in the distribution of the images at issue. As such, Mr. Preece did not "engage[] in distribution" as part of his offense of conviction, and the two-level enhancement under USSG § 2G2.1(b)(3) cannot apply.

USPO argues Application Note 2 to USSG § 2G2.1 permits the enhancement because Mr. Preece "induced" the minor to send images to him. *See* PSR, Page 15. Application Note 2 reads as follows:

> For purposes of subsection (b)(3)(F), the defendant "knowingly engaged in distribution" if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute.

USSG 2G2.1, comment. (n.2). But Application Note 2's definition of knowingly engaging in distribution differs significantly from the plain language of the Guideline itself and broadly expands its application:

> If the defendant knowingly engaged in distribution, other than the distribution described in subsections (A) through (E), increase by 2 levels.

USSG § 2G2.1(b)(3)(F).

It is well settled in the Sixth Circuit that "commentary" to the Sentencing Guidelines "has no independent legal force—it serves only to *interpret* the Guidelines' text, not to replace or modify it." *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.2019) (citing *Stinson v. United States*, 508 U.S. 36, 44-46 (1993)) (emphasis in original). "[T]he application notes are *intepretations of*, not

*additions to*, the Guidelines themselves[.]" *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir.2016) (en banc) (emphasis in original).

Here, USSG § 2G2.1(b)(3)(F) requires that a defendant who "knowingly engaged in distribution" be assessed a two-level enhancement. But the facts of this case confirm Mr. Preece never "engaged in" distribution himself. While USPO argues his conduct fits within the scope of Application Note 2 because he "induced" someone else to engage in distribution, the Guideline itself does not reference such conduct. USPO's proposed interpretation would eliminate the distinction between soliciting distribution and knowingly engaging in it. Such a construction conflicts with the Sixth Circuit's opinion in *Havis* and must be rejected. *Cf. United States v. Derringer*, 844 Fed.Appx. 802, 809-11 (6th Cir.2021).

The Court should grant Mr. Preece's objection to the two-level distribution enhancement under USSG § 2G2.1(b)(3).

**Objection to Five-Level Enhancement for Engaging in a "Pattern of Activity" Involving Prohibited Sexual Conduct—USSG § 4B1.5(b)(1)**

Mr. Preece objects to USPO's application of a five-level enhancement pursuant to USSG § 4B1.5(b)(1) based on its determination that he engaged in a "pattern of activity" involving prohibited sexual conduct. This objection is contemplated in Mr. Preece's Plea Agreement. *See* [R. 34: Plea Agreement: Pages 3-4, Paragraph 5]. Because his offense conduct occurred on a single day and

involved a single victim, Mr. Preece's relevant conduct does not establish the "pattern of activity" necessary to trigger the enhancement.

A five-level enhancement applies under USSG § 4B1.5(b)(1) if a defendant who is not a career offender and who has no prior convictions for a sex offense engaged in a "pattern of activity involving prohibited sexual conduct[.]" Application Note 4(B) states in relevant part:

> (i) In General. – For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.
>
> (ii) Occasion of Prohibited Sexual Conduct. – An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG § 4B1.5, comment. (n.4(B(i-ii))). The Sixth Circuit has held that the pattern enhancement requires proof that a defendant abused a minor on at least two separate occasions. *See, e.g., United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir.2019) (pattern enhancement applied where minor victims testified defendant touched them inappropriately "more than one time on different days"). *See also United States v. Fleisher*, 971 F.3d 559, 572 (6th Cir.2020) (citing *United States v. Peck*, 496 F.3d 885, 891 (8th Cir.2007) (citing *United States v. Schmeilski*, 408 F.3d 917, 920 (7th Cir.2005))) (defendant who had on "one occasion photographed three minor children engaging in sexually explicit conduct" could receive enhancement for number of victims under USSG § 2G2.1(d)(1), but not a

"pattern of activity" enhancement "because prohibited sexual conduct did not occur on at least two separate occasions.").

In addressing his objection to the two-level distribution enhancement, USPO indicated it "agree[d] with" Mr. Preece that his relevant conduct did not include the other dismissed counts of the Indictment. *See* PSR, Page 15. Here, however, USPO argues that all of the dismissed charges can be considered for purposes of determining if the five-level pattern enhancement applies. *Id*. at Pages 15-16. This argument ignores USSG § 1B1.3(a)(1)'s restrictions on Mr. Preece's relevant conduct and impermissibly relies on Guidelines commentary to broaden application of the five-level pattern enhancement. *Havis*, 927 F.3d at 386.

To reiterate, Mr. Preece's relevant conduct for sentencing purposes is limited to his actions "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). *See also Schock*, 862 F.3d at 567. This includes Mr. Preece's conduct with respect to Count 1 on November 5, 2018, which constitutes one occasion when he engaged in prohibited sexual conduct with a minor. But it does not include Mr. Preece's actions with regard to the dismissed counts. Because his relevant conduct under USSG § 1B1.3(a)(1) contains no additional instances of prohibited sexual conduct, Mr. Preece did not engage in the requisite "pattern of activity…on at least two separate occasions[,]" and the pattern enhancement cannot not apply. USSG § 4B1.5, comment. (n.4(B)).

It is important to note that while this restriction on relevant conduct applies in "determining [Mr. Preece's] applicable guideline sentencing range[,]" the Court is free to consider the dismissed counts when ultimately deciding what sentence to impose. USSG § 1B1.4, comment. (backg'd); USSG § 1B1.4 (citing 18 U.S.C. § 3661) ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."). This is when it would be appropriate for the Court to consider Mr. Preece's dismissed conduct, not before.

USPO relies on Application Note 4(B)(ii) to USSG § 4B1.5 to argue the Court can consider the dismissed charges in determining if the pattern enhancement should apply. *See* PSR, Page 15-16. To be sure, the Application Note says "an occasion of prohibited sexual conduct" need not have "occurred during the course of the instant offense" or "resulted in a conviction[.]" USSG § 4B1.5, comment. (n.4(B)(ii)). But Guidelines "commentary" like this Application Note cannot broaden the scope of the Court's inquiry beyond what is permitted under the plain language of USSG § 1B1.3(a)(1). *Havis*, 927 F.3d at 386 (citing *Stinson*, 508 U.S. at 44-46). While the Court may rely on the dismissed conduct "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted[,]" it cannot be considered in calculating the applicable Guidelines range. USSG § 1B1.4.

The Court should grant Mr. Preece's objection to the five-level pattern enhancement under USSG § 4B1.5(b)(1) and consider the dismissed conduct later in determining an appropriate sentence.

**Objection to Special Condition of Supervision – Paragraph 51**

Mr. Preece objects to USPO's inclusion of a special condition of supervision prohibiting him from "go[ing] to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available." *See* PSR, Paragraph 51.

This condition is overbroad. Pornography is available in numerous locations that are part of everyday life such as grocery stores and gas stations. All conditions of supervised release must be "reasonably related" to the "goals of probation, the rehabilitation of the defendant, and the protection of the public" and involve "no greater deprivation of liberty than is reasonably necessary" to serve these goals. 18 U.S.C. § 3583(d)(1-2); *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir.2007). This condition violates those principles because it does not contain any mechanism by which Mr. Preece can be present at locations where pornography or other sexually oriented materials are incidentally available. *See Packingham v. North Carolina*, 137 S.Ct. 1730 (2017).

Another division of this Court recently resolved this issue by amending the language of the condition to read as follows:

> "You must not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually-oriented material, items or services are available. This does not encompass

commercial entities in which pornography or sexually oriented material might be available incidentally to the primary purpose of that commercial entity."

Mr. Preece asks the Court to include the same language in his special conditions of supervision.

### History and Characteristics of the Defendant

The PSR has discussed these considerations generally, but Mr. Preece offers the following additional detail regarding his background:

Mr. Preece is a 40 year-old lifelong resident of Eastern Kentucky. Mr. Preece's parents divorced when he was just eleven years old. *See* PSR, Paragraph 38. As family friend Rick Brewer notes in his letter of support, the timing of the divorce "when he was a young child" impacted Mr. Preece for years. [Exhibit 1: Rick Brewer Letter]. Mr. Preece's mother Trina Hewlett "struggled to provide" for the family, and it was "many years before their situation improved." *Id*. Mr. Preece's father "did little to assist…during his childhood." *See* PSR, Paragraph 38. Mr. Preece has been estranged from his father since the divorce. Mr. Preece attempted to reconcile by inviting him to his first wedding in 2010, but his father refused to attend. *Id.*

Perhaps because of these struggles, Mr. Preece was extremely "caring to his family" and others in need from a very young age. [Exhibit 2: Vicki Prichard Letter]. As a child, Mr. Preece checked on elderly neighbors to make sure they "had what they needed, from shoveling snow to riding his bike to the country store to pick up groceries." [Exhibit 3: Trina Hewlett Letter]. Mr. Preece "got a job at

the age of twelve" in a local store and also began growing his own vegetable garden, which he shared with neighbors. *Id*. Steven and Reva Helmbrecht recall that Mr. Preece was "always well behaved" even as a young child and consistently stepped up to be "there to help a family member in need." [Exhibit 4: Steven and Reva Helmbrecht Letter]. High school was no different. Mr. Preece was considered a "conscientious student" who was "well-liked by both faculty and students[.]" [Exhibit 5: Robin Parker Letter].

The "consistent thread" running through Mr. Preece's life is his dedication to "family, a strong work ethic, and resilience." [Exhibit 2: Vicki Pritchard Letter]. Wanda Parker describes Mr. Preece as "one of the best individuals I have ever known in my 73 years on this earth." [Exhibit 6: Wanda Parker Letter]. As Robin Parker put it, Mr. Preece has always been "quick to help anyone in need, and his intelligence, sharp wit, big heart, and quick, bright smile made him a joy to be around." [Exhibit 5: Robin Parker Letter]. Family friend Nadeen Findley recalls "[f]rom the first moment" she met him that he was always polite, "reliable[,] and responsible." [Exhibit 7: Nadeen Findley Letter]. Matilda Hewlett says Mr. Preece has been "consistently devoted and loyal to his family throughout his life[,]" often helping with yard work and other chores when the need arose. [Exhibit 8: Matilda Hewlett Letter].

When his grandmother's health declined and she was no longer able to walk without assistance, Mr. Preece built a service ramp "so she could access her residence with her walking aid or wheelchair." [Exhibit 1: Rick Brewer Letter].

When Stacy Henderson gave birth prematurely and her child "had to spend the first three months of his life in the neonatal intensive care unit[,]" Mr. Preece was there to lend a hand. [Exhibit 9: Stacy Henderson Letter]. Mr. Preece did what he could "to lift [her] spirits when going through challenging times." *Id*. It is safe to say that Mr. Preece has always been there to "do whatever was necessary" for those in need. [Exhibit 8: Matilda Hewlett Letter].

After graduating from Lawrence County High School, Mr. Preece earned a bachelor's degree from Morehead State University in 2012. *See* PSR, Paragraph 43. While at Morehead, Mr. Preece worked for two years as a campus security officer. *See id*. at Paragraph 44. He also worked as a Kentucky State Police (KSP) trooper from 2004 to 2013. *Id*. While serving with KSP, Mr. Preece continued his education and eventually received a Master of Science in Criminal Justice from the University of the Cumberlands in Williamsburg, Kentucky in 2015. *Id*. The Bath County Sheriff's Office hired him shortly thereafter. *Id*. Mr. Preece and his wife also opened a jewelry store in Morehead, Kentucky in 2018. *Id*.

Despite his conduct in this case, serving as a law enforcement officer was one of the greatest privileges of Mr. Preece's life. As Patricia Wilkerson notes in her letter, Mr. Preece "always worked hard, showed up on time, and went the extra mile personally and professionally serving the community." [Exhibit 10: Patricia Wilkerson Letter]. Although his mother was initially surprised when she learned he planned to join KSP, Mr. Preece considered it the perfect job because it gave

him the opportunity to help people in need just as he had done since childhood. *See* [Exhibit 3: Trina Hewlett Letter]. Mr. Preece understands the Court will thoroughly consider all aspects of his offense conduct in determining an appropriate sentence under 18 U.S.C. § 3553. Mr. Preece simply asks the Court also to take into account the person he has been throughout his life, particularly before he made the poor decisions that led to his prosecution in this case.

Last, Mr. Preece notes he suffers from several medical issues. Mr. Preece has been diagnosed with high blood pressure and lower back problems for which he previously received prescription medication. *See* PSR, Paragraph 40. Mr. Preece also has suffered through several serious kidney stone episodes during the last six years. *Id*. At times, Mr. Preece has struggled for weeks before the issue finally resolved. *Id*. Given the frequency of these attacks and the unavailability of narcotic pain medication in traditional BOP facilities, Mr. Preece asks the Court to recommend he be designated to a federal medical facility to address his health problems.

## The Sentence

In all criminal cases, any sentence imposed should reflect the seriousness of the offense, promote respect for the law, and provide just punishment to the defendant. The sentence also should afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. In addition, the sentence should provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effect manner

available. Accordingly, the Court is required to consider all of the types of sentences available. *See* 18 U.S.C. § 3553(a).

The offense at issue is serious. Mr. Preece has admitted to persuading a minor to produce visual depictions of sexually explicit conduct and to transmit them to him via the Internet. Mr. Preece's role as a law enforcement officer and his contact with the minor in this case are also troubling. The 180-month statutory minimum sentence underscores the significance of Mr. Preece's conviction. *See* PSR, Paragraph 46. Taking into account his outstanding objections to the PSR, Mr. Preece believes his applicable Guidelines range should be 160-210 months based on a total offense level of 35 and a criminal history category of I. Given the mandatory minimum and nature and circumstances of Mr. Preece's conduct, a sentence of 210 months will be sufficient to reflect the seriousness of the offense.

As to promoting respect for the law, Mr. Preece again notes he served 12 years as a law enforcement officer with KSP and the Bath County Sheriff's Office. Given his background, it is no surprise Mr. Preece has zero criminal history. There is no doubt his conduct in this case is the greatest shame of his life. Mr. Preece will never again be able to serve his community as he did before. Instead, he will spend the rest of his life trying to regain the trust of those he betrayed. Regardless, Mr. Preece will always have a healthy respect for the law no matter what sentence the Court imposes.

A sentence of 210 months also will be sufficient to provide just punishment and to afford adequate deterrence. As discussed previously, Mr. Preece has never

been convicted of another crime in his life. He spent his formative years focused on his family, his education, and his community. He continued that service as a member of law enforcement for more than decade. Sadly, Mr. Preece's role as a deputy sheriff played a part in his offense. But Mr. Preece's conviction in this case guarantees he will never hold a position that would provide an opportunity to commit a similar offense in the future. Likewise, a lengthy term of supervised release combined with the Court's special conditions restricting contact with minors, prohibiting access to computers and other electronic devices, and mandating inspection of his residence and property will ensure Mr. Preece never engages in similar conduct again.

## Conclusion

For the foregoing reasons, Mr. Preece respectfully requests that the Court grant his objections to the distribution and pattern enhancements and impose a sentence of 210 months, 17 and ½ years, which would be the top of the applicable Guidelines range. Such a sentence compares favorably with similar cases cited by the government in its sentencing memorandum. *See, e.g.,* [R. 43: Government Sentencing Memorandum, Page 7] (citing *United States v. Corey Lane Snapp*, 15-CR-074-DCR, sentenced to 215 months to be followed by a lifetime term of supervised release after pleading guilty to one count of production); *id*. at Page 10 (citing *United States v. Joseph Moctezuma Lopez*, 20-CR-33-S-JMH, sentenced to 180 months of imprisonment to be followed by a lifetime term of supervised release after pleading guilty to one count of production). Some of the other

defendants referenced by the government who received much more significant sentences had prior convictions for similar conduct or were convicted at trial, often for more than one offense. *See id*. at Pages 6-10.

Mr. Preece also asks the Court to recommend that he be designated to a federal medical facility to complete his sentence. In the alternative, Mr. Preece requests the Court recommend that he serve at a facility where BOP's Sex Offender Management Program (SOMP) is in place, preferably as close as possible to his family in Kentucky. SOMP facilities have a higher percentage of sexual offenders in the general population, reducing the likelihood of assault and making it easier for prison officials to monitor the inmate population. BOP currently offers sex offender treatment at the following facilities: FMC Carswell in Fort Worth, Texas; FMC Devens in Ayer, Massachusetts; FCI Elkton in Lisbon, Ohio; FCI Englewood in Littleton, Colorado; FCI Marianna in Marianna, Florida; and FCI Seagoville in Seagoville, Texas.[2] *See* Federal Bureau of Prisons Custody & Care – Sex Offenders (available at https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp) (last visited: March 20, 2022).

---

[2] BOP also offers sex offender treatment at USP Marion in Marion, Illinois, FCI Petersburg Medium in Hopewell, Virginia, and USP Tuscon in Tuscon, Arizona. However, these are medium or high-security facilities that present additional risks, particularly considering Mr. Preece's background in law enforcement.

Respectfully Submitted,

/s Jarrod J. Beck

LAW OFFICE OF JARROD J. BECK, PLLC
101 WEST SHORT STREET
LEXINGTON, KENTUCKY 40507
TELEPHONE: (270) 860-2025

COUNSEL FOR JOSHUA PREECE

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2022, I filed the foregoing sentencing memorandum with the Clerk of the Court, and the ECF filing system will notify all counsel of record.

/s Jarrod J. Beck

COUNSEL FOR JOSHUA PREECE